**POMERANTZ LLP**
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jlindenfeld@pomlaw.com

*Counsel for Plaintiff*

*- additional counsel on signature block -*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT GILJOHANN, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>AMERICAN RENAL ASSOCIATES HOLDINGS, INC., JOSEPH A. CARLUCCI, JASON M. BOUCHER, and JONATHAN L. WILCOX,<br><br>     Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Giljohann ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding American Renal Associates Holdings, Inc. ("American Renal" or the "Company"), analysts' reports and advisories about the Company, and information readily

1

obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired American Renal securities between August 10, 2016 and March 27, 2019, both dates inclusive (the "Class Period").  Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and § 27 of the Exchange Act.

4.      Venue is proper in this District pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as Defendants conduct business within this District, and the false statements entered and subsequent damages occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mail, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying Certification, purchased American Renal securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant American Renal purports to operate as a dialysis services provider in the United States.  The Company is incorporated in Delaware and has locations in New Jersey.  American Renal's common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "ARA."

8.     Defendant Joseph A. Carlucci ("Carlucci") co-founded American Renal and has served as its Chief Executive Officer ("CEO") since 2006 and Chairman of the Board of Directors since 2012.

9.     Defendant Jason M. Boucher ("Boucher") had been Vice President and Chief Financial Officer ("CFO") of American Renal from October 1, 2018 until March 26, 2019.  Prior to that, he served as the Chief Accounting Officer and Vice President of Finance at American Renal.

10.     Defendant Jonathan L. Wilcox ("Wilcox") served as Vice President and CFO of American Renal from 2011 until September 30, 2018.

11.     Defendants Carlucci, Boucher, and Wilcox are sometimes referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

a)     directly participated in the management of the Company;

b)     was directly involved in the day-to-day operations of the Company at the highest levels;

c)    was privy to confidential proprietary information concerning the Company and its business and operations;

d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g)    approved or ratified these statements in violation of the federal securities laws.

13.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

16.    On August 9, 2016, after the market closed, the Company filed a Form 10-Q for the quarter ended June 30, 2016 (the "2Q 2016 10-Q") with the SEC, which provided the Company's second quarter 2016 financial results and position.  The 2Q 2016 10-Q was signed by Defendant Wilcox.  The 2Q 2016 10-Q also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Carlucci and Wilcox attesting to the

accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

17.     The 2Q 2016 10-Q stated the following concerning the Company's internal control over financial reporting:

> There have been no changes in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Securities Exchange Act) during the quarter ended June 30, 2016 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

18.     The 2Q 2016 10-Q stated the following concerning the Company's accounting process for revenue recognition, collections, and related matters:

> *Provision for uncollectible accounts.* Patient service operating revenues are reduced by the provision for uncollectible revenues to arrive at net patient service operating revenues. Provision for uncollectible accounts represents reserves established for amounts for which patients are primarily responsible that we believe will not be collectible.
>
> Contractual allowances, along with provisions for uncollectible amounts, are estimated based upon contractual terms, regulatory compliance and historical collection experience. Net revenue recognition and allowances for uncollectible billings require the use of estimates of the amounts that will actually be realized.

19.     On March 8, 2017, the Company filed a Form 10-K for the fiscal year ended December 31, 2016 (the "2016 10-K") with the SEC, which provided the Company's year-end financial results and position.  The 2016 10-K was signed by Defendants Carlucci and Wilcox. The 2016 10-K also contained signed SOX certifications by Defendants Carlucci and Wilcox attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

20.     The 2016 10-K stated the following concerning the Company's internal control over financial reporting:

> There have been no changes in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Securities Exchange Act) during

the quarter ended December 31, 2016 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

21.     The 2016 10-K stated the following concerning the Company's accounting process for revenue recognition, collections, and related matters:

> *Provision for uncollectible accounts.* Patient service operating revenues are reduced by the provision for uncollectible revenues to arrive at net patient service operating revenues. Provision for uncollectible accounts represents reserves established for amounts for which patients are primarily responsible that we believe will not be collectible.
>
> Contractual allowances, along with provisions for uncollectible amounts, are estimated based upon contractual terms, regulatory compliance and historical collection experience. Net revenue recognition and allowances for uncollectible billings require the use of estimates of the amounts that will actually be realized. Changes in estimates are reflected in the then-current financial statements based on on-going actual experience trends, or subsequent settlements and realizations depending on the nature and predictability of the estimates and contingencies.

22.     On March 6, 2018, the Company filed a Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K") with the SEC, which provided the Company's year-end financial results and position.  The 2017 10-K was signed by Defendants Carlucci and Wilcox.  The 2017 10-K also contained signed SOX certifications by Defendants Carlucci and Wilcox attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

23.     The 2017 10-K stated that "management concluded that our internal control over financial reporting was effective as of December 31, 2017."  The 2017 10-K also provided that there "have been no changes in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) during the quarter ended December 31, 2017 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

24.     The 2017 10-K stated the following concerning the Company's accounting process for revenue recognition, collections, and related matters:

> *Provision for uncollectible accounts.* Patient service operating revenues are reduced by the provision for uncollectible revenues to arrive at net patient service operating revenues. Provision for uncollectible accounts represents reserves established for amounts for which patients are primarily responsible that we believe will not be collectible.
>
> Contractual allowances, along with provisions for uncollectible amounts, are estimated based upon contractual terms, regulatory compliance and historical collection experience. Net revenue recognition and allowances for uncollectible billings require the use of estimates of the amounts that will actually be realized. Changes in estimates are reflected in the then-current financial statements based on on-going actual experience trends, or subsequent settlements and realizations depending on the nature and predictability of the estimates and contingencies.

25.     On November 9, 2018, the Company filed a Form 10-Q for the third quarter ended September 30, 2018 (the "3Q 2018 10-Q") with the SEC, which provided the Company's financial results and position for that period.  The 3Q 2018 10-Q was signed by Defendant Boucher.  The 3Q 2018 10-Q also contained signed SOX certifications by Defendants Carlucci and Boucher attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

26.     The 3Q 2018 10-Q stated the following concerning the Company's internal control over financial reporting:

> There have been no changes in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) during the quarter ended September 30, 2018 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

27.     The statements referenced in ¶¶ 16-26 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to

Defendants or recklessly disregarded by them.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) issues with American Renal's accounting process for revenue recognition, collections, and related matters would give rise to an SEC investigation into the same, and increased regulatory scrutiny by the SEC; (ii) American Renal's financial statements for the fiscal years 2014, 2015, 2016, and 2017 contained in its Annual Reports for the years ended December 31, 2016 and 2017, and its condensed consolidated financial statements in quarterly reports from 2016 through 2018, were false and could not be relied upon; (iii) American Renal had material weaknesses in its internal control over financial reporting; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

28.     On November 9, 2018, American Renal filed a Form 10-Q with the SEC in which the Company disclosed that in October 2018, SEC staff "requested that the Company voluntarily provide documents and information relating to certain revenue recognition, collections and related matters."

29.     On this news, American Renal's stock price fell $0.74 per share, or over 4%, to close at $16.76 per share the next trading day, November 12, 2018.

30.     On March 8, 2019, before the market opened, American Renal filed a Form NT 10-K with the SEC, announcing it would delay the filing of its earnings report for the fiscal year ended December 31, 2018 as it continues to examine reserve computations and other accounting practices that may have an impact on the company's accounts receivable and revenue for 2018, as well as previously reported fiscal years ranging from 2014 through 2017.  According to American Renal, this followed the SEC's October 2018 request for documents concerning American Renal's revenue recognition, collections, and other related matters.  The SEC filing stated, in relevant part:

American Renal Associates Holdings, Inc. (the "Company") is unable to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2018 (the "Form 10-K") by the prescribed March 18, 2019 due date without unreasonable effort and expense due to the circumstances described below.

As previously disclosed, in October 2018, the Staff of the Securities and Exchange Commission ("SEC") requested that the Company voluntarily provide documents and information relating to certain revenue recognition, collections and related matters. Following receipt of the SEC request, the Company responded by producing documents and information to the Staff and expects to continue to cooperate with the SEC by providing additional documents and information to the Staff in the future. In addition, the Audit Committee (the "Audit Committee") of the Board of Directors of the Company began an examination of the Company's revenue recognition methodology and related accounting matters, such as internal control over financial reporting related to revenue recognition and related matters, with the assistance of legal counsel that reports to the Audit Committee, as well as independent accounting advisors retained by the Audit Committee's counsel.

The Audit Committee's review is continuing. With the assistance of its advisors, the Audit Committee is examining reserve computations and other accounting practices that could have an impact on accounts receivable and revenue for the fiscal year ended December 31, 2018, as well as the previously reported fiscal years ended December 31, 2014, 2015, 2016 and 2017, the fiscal quarters within those fiscal years and the first three fiscal quarters of 2018. The Audit Committee is continuing to evaluate whether and how any such adjustments will affect individual quarters and years during the affected period, and the Company does not expect to comment further on the Audit Committee's review until it is completed.

Due to the ongoing Audit Committee review, the Company has been unable to complete its preparation and review of the Form 10-K in time to file within the prescribed time period without unreasonable effort or expense. The Audit Committee and the Board are working diligently to complete their review so that the Company can file its Form 10-K and make any related disclosures as promptly as practicable.

31.     On this news, American Renal's stock price fell $2.05 per share, or over 16%, to close at $10.46 per share on March 8, 2019.

32.     Then, on March 27, 2019, after market hours, American Renal announced the resignation of its CFO, and that American Renal would restate its financial results for the fiscal years ended 2014 through 2017.  It also announced that its investigation had not been finalized. American Renal stated, in relevant part:

BEVERLY, MA (March 27, 2019) - American Renal Associates Holdings, Inc. (NYSE: ARA) (the "Company"), a leading provider of outpatient dialysis services, today announced an update with respect to the previously disclosed review that is being conducted by the Audit Committee (the "Audit Committee") of the Board of Directors (the "Board") of the Company. The Company also announced the resignation of Jason Boucher as Vice President and Chief Financial Officer, effective March 26, 2019, and the appointment of Mark Herbers to the role of Interim Chief Financial Officer and Interim Chief Accounting Officer, effective March 26, 2019.

**Update on the Review Being Conducted by the Audit Committee of the Board of Directors and Restatement**

On March 21, 2019, the Board concluded that the Company's previously issued consolidated financial statements and other financial data for the fiscal years ended December 31, 2014, 2015, 2016 and 2017 contained in its Annual Reports on Form 10-K for the years ended December 31, 2016 and 2017, and its condensed consolidated financial statements for the quarters and year-to-date periods ended March 31, June 30 and September 30, 2016; March 31, June 30 and September 30, 2017; and March 31, June 30 and September 30, 2018 contained in its Quarterly Reports on Form 10-Q (collectively, the "Non-Reliance Periods") should be restated and should no longer be relied upon for the reasons described below. The Board also determined that the Company's disclosures related to such financial statements and related communications issued by or on behalf of the Company with respect to the Non-Reliance Periods, including management's assessment of internal control over financial reporting, should no longer be relied upon. The determination by the Board was made upon the recommendation of the Audit Committee as a result of the review described below.

As previously disclosed, in October 2018, the Staff of the Securities and Exchange Commission ("SEC") requested that the Company voluntarily provide documents and information relating to certain revenue recognition, collections and related matters. Following receipt of the SEC request, the Company responded by producing documents and information to the Staff and expects to continue to cooperate with the SEC by providing additional documents and information to the Staff in the future. In addition, as previously disclosed in the Company's Current Report on Form 8-K filed March 8, 2019, the Audit Committee began an examination of the Company's revenue recognition methodology and related accounting matters, such as internal control over financial reporting related to revenue recognition and related matters, with the assistance of legal counsel that reports to the Audit Committee, as well as independent accounting advisors retained by the Audit Committee's counsel.

The Audit Committee's review is continuing. The principal findings to date include the following:

- In recording revenue based on expected payments from third-party payers during the Non-Reliance Periods, the Company did not appropriately reconcile its contractual allowance estimates for discounts and price concessions with cash subsequently received in respect of prior period patient claims. In addition, the Company did not record a reserve for uncollectible accounts across all of its payer categories during the Non-Reliance Periods.

*       *       *

The Company has not yet finalized its quantification of the impact for the fiscal periods described above, nor has it finalized its quantification of the impact for individual fiscal quarters within the Non-Reliance Periods.

- In addition, the Audit Committee continues to review additional accounting matters having to do with revenue recognition and accrued expenses and other current liabilities for the Non-Reliance Periods as they relate to revenue recognition. The Company continues to quantify the impact of these matters for the Non-Reliance Periods, which could be material to accrued expenses and other current liabilities and to operating income and income before income taxes for the Non-Reliance Periods. For the avoidance of doubt, any impact of these matters is not included in the estimated cumulative, net impact, or the impact for any of the fiscal periods described above, of expected corrections to contractual allowances and reserves for uncollectible accounts described above.

- The findings of the Audit Committee's review are also expected to require revised calculations of related metrics such as revenue per treatment and days sales outstanding throughout the Non-Reliance Periods. The restated amounts and metrics may have an ancillary impact on other reported amounts in the financial statements.

- As a result of the foregoing, the Company's consolidated financial statements for the Non-Reliance Periods were not prepared in accordance with generally accepted accounting principles ("GAAP") and should not be relied upon. In addition, the Company's lack of adequate internal control over financial reporting relating to these matters for the Non-Reliance Periods constituted one or more material weaknesses in internal control over financial reporting.

33.     On this news, American Renal's stock price fell $3.69 per share, or 38%, to close at $6.01 per share on March 28, 2019, damaging investors.

34.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired American Renal securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, American Renal securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of American Renal securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

41.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- American Renal securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold American Renal securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I
### (Violations of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

44.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47.     The Company and the Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of American Renal securities during the Class Period.

48. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants, by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

49. The Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

50. As a result of the foregoing, the market price of American Renal securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of American Renal securities during the Class Period in purchasing American Renal securities at prices that were artificially

16

inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

51.     Had Plaintiff and the other members of the Class been aware that the market price of American Renal securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased American Renal securities at the artificially inflated prices that they did, or at all.

52.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

53.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of American Renal securities during the Class Period.

**COUNT II**
**(Violations of Section 20(a) of The Exchange Act Against The Individual Defendants)**

54.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

56.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the

Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein.   The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of American Renal securities.

58.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company.   By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.  Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.  Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.  Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 19, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jonathan D. Lindenfeld*
Jonathan D. Lindenfeld
Jeremy A. Lieberman*
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom*
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

(*Pro hac vice* applications forthcoming)

***Attorneys for Plaintiff***

American Renal Associates Holdings, Inc. CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAW

| Submission Date | 2019-03-29 16:59:58 |
|---|---|

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1. I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.
2. I have reviewed a Complaint against American Renal Associates Holdings, Inc.  ("American Renal" or the "Company"), and authorize the filing of a motion on my behalf for appointment as lead plaintiff.
3. I did not purchase or acquire American Renal securities at the direction of counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.
4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired American Renal securities during the Class Period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.
5. To the best of my current knowledge, the transactions set forth below represent all of my transactions in American Renal securities during the Class Period as specified in the Complaint.
6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve or served as a representative party on behalf of a Class under the federal securities laws.
7. I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the Class as ordered or approved by the Court.
8. I declare, under penalty of perjury, that the foregoing is true and correct.

**My Products**

| Print Name | Robert Giljohann |
|---|---|

**Acquisitions:**

| Date Acquired MM/DD/YYYY | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| 03/27/2019 | 120 | 9.74 |

**Sales: (if none, write '0')**

| Date Sold MM/DD/YYYY | Number of Shares Sold | Price per Share Sold |
|---|---|---|
| 0 | 0 | 0 |

**Draw your signature using your mouse.**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Please continue to the next page of certification below.

| Full Name | Robert Giljohann |



(redacted)

**American Renal Associates Holdings, Inc. (2019)**                              **Giljohann, Robert**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|----------------------|---------------------|
| 3/27/2019 | Purchase | 120 | $9.7400 |